MORGAN, LEWIS & BOCKIUS LLP
Max Fischer, Bar No. 226003
max.fischer@morganlewis.com
Aimee Mackay, Bar No. 221690
aimee.mackay@morganlewis.com
Sonia Vucetic, Bar No. 307414
sonia.vucetic@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071
Tel:    +1.213.612.2500
Fax:   +1.213.612.2501

MORGAN, LEWIS & BOCKIUS LLP
Taylor D. Horn, Bar No. 329435
taylor.horn@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Tel:    +1.415.442.1000
Fax:   +1.415.442.1001

Attorneys for Defendant
AMAZON LOGISTICS, INC. (erroneously sued as
AMAZON.COM SERVICES, LLC)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTURO ROMERO, on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>vs.<br><br>GREENWICH LOGISTICS, LLC, a Delaware corporation; AMAZON.COM SERVICES, LLC, a Delaware corporation; NEED IT NOW, LLC, a California corporation; SOS LOGISTICS, LLC, a California corporation; ASAP COURIER AND LOGISTICS, a business entity of unknown form; LUCKY 2 LOGISTICS, LLC, a business entity of unknown form; WDS LOGISTICS, LLC, a business entity of unknown form; NEED IT NOW COURIER OF MD, a business entity of unknown form; LEXINGTON LOGISTICS, a business entity of unknown form; FASTMILE DELIVERS, LLC, a business entity of unknown form; and DOES 1 through 50, inclusive,<br><br>*Defendants*. | Case No.  3:20-cv-09104<br><br>**DEFENDANT AMAZON'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>**[28 U.S.C. §§ 1332, 1441, 1446, 1453]**<br><br>Complaint Filed:   November 5, 2020 |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 40002463.7

DEFENDANT AMAZON'S NOTICE OF
REMOVAL [28 U.S.C. §§ 1332, 1441, 1446, 1453]

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, Defendant Amazon Logistics, Inc.[1] (erroneously sued as Amazon.com Services, LLC; hereinafter, "Amazon"), by and through its counsel, removes the above-entitled action to this Court from the Superior Court of the State of California for the County of Alameda, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.  Amazon bases its removal on the following grounds:

**I.     PROCEDURAL BACKGROUND**

1.     On November 5, 2020, Plaintiff Arturo Romero ("Plaintiff") filed an unverified putative class action complaint in the Superior Court of the State of California, County of Alameda, entitled *Arturo Romero, on behalf of himself all others similarly situated v. Greenwich Logistics, LLC, et al.*, Case No. RG20079742 (the "Complaint").

2.     On November 16, 2020, Plaintiff served copies of the Summons, Complaint, Civil Case Cover Sheet, and Civil Lawsuit Notice on the registered agent for Amazon.  True and correct copies of these documents are attached hereto as **Exhibit A**.  Amazon also includes within **Exhibit A**: Proof of service on Complaint as to Lucky 2 Logistics, LLC, Proof of Service on Complaint as to Greenwich Logistics, LLC Filed, Proof of Service by Mail, Proof of Service on Complaint as to Need It Now Courier of MD, Proof of Service on Complaint As to SOS Logistics, LLC, Proof of Service on Complaint as to WDS Logistics, LLC, and the Notice of Hearing regarding Complex Determination Hearing and Case Management Conference.  **Exhibit A** constitutes all of the pleadings, process, and orders served upon Amazon or filed in the Superior Court action.

3.     Plaintiff alleges that he worked for Defendants as a non-exempt hourly employee.  (Exh. A, Compl., ¶ 30.)  The Complaint defines "Defendants" to mean "GREENWICH LOGISTICS, LLC, a Delaware corporation; AMAZON.COM SERVICES, LLC, a Delaware corporation; NEED IT NOW, LLC, a California corporation; SOS LOGISTICS, LLC, a

---

[1] Amazon.com Services, LLC is an erroneously named Defendant.  Amazon Logistics, Inc. is the corporate entity that contracted with Defendant Greenwich Logistics.

California corporation; ASAP COURIER AND LOGISTICS, a business entity of unknown form; LUCKY 2 LOGISTICS, LLC, a business entity of unknown form; WDS LOGISTICS, LLC, a business entity of unknown form; NEED IT NOW COURIER OF MD, a business entity of unknown form; LEXINGTON LOGISTICS, a business entity of unknown form; FASTMILE DELIVERS, LLC, a business entity of unknown form; and DOES 1 through 50, inclusive." (Exh. A, Compl., ¶ 1.)  Plaintiff seeks to bring his class action on behalf of "all others similarly situated," and  asserts claims on behalf of the following putative classes and sub-classes:

> **Hourly Employee Class:** All persons employed by Defendants, collectively or separately, and/or any staffing agencies and/or any other third parties in hourly or non-exempt positions in California four years prior to the filing of this action and ending on the date that final judgment is entered in this action ("Hourly Employee Class").
>
> > **Meal Period Sub-Class:** All **Hourly Employee Class** members who worked in a shift in excess of five hours during the four years prior to the filing of this action and ending on the date that final judgment is entered in this action.
> >
> > **Rest Period Sub-Class:** All **Hourly Employee Class** members who worked a shift of at least three and one-half (3.5) hours the four years prior to the filing of this action and ending on the date that final judgment is entered in this action.
> >
> > **Waiting Time Penalties Sub-Class:** All **Hourly Employee Class** members who separated from their employment with Defendants during the period beginning three years before the filing of this action and ending when final judgment is entered.
> >
> > **Wage Statement Penalties Sub-Class:** All persons employed by Defendants in California during the period beginning one year before the filing of this action and ending when final judgment is entered.
>
> **Reimbursement Class:** All persons employed by Defendants in California who incurred unreimbursed business expenditures for Defendants during the period beginning four years before the filing of this action and ending when final judgment is entered.
>
> **UCL Class:** All **Hourly Employee Class** members employed by Defendants in California during the four years prior to the filing of this action and ending on the date that final judgment is entered in this action.

 (Exh. A, Compl., ¶ 22.)

4. Plaintiff seeks class damages for: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to pay minimum and overtime wages; (4) failure to provide accurate written wage statements; (5) failure to indemnify; (6) failure to pay all final wages; and (7) unfair competition.

5. Based on Plaintiff's apparent theory that he and other putative class member delivery drivers were jointly employed by Greenwich Logistics and Amazon, Amazon has calculated the amount in controversy as set forth below. Amazon Logistics, Inc. (not Amazon.com Services LLC) contracted with Greenwich Logistics to provide delivery services performed by delivery personnel employed by Greenwich Logistics. Amazon denies that it employed or jointly employed Plaintiff or any other named Defendant's employee. Amazon reserves the right to provide additional calculations if Plaintiff's theory changes.

## II. REMOVAL IS TIMELY

6. Amazon was served with the Summons and Complaint on November 16, 2020. Because this Notice of Removal is filed within thirty days of service of the Complaint, it is timely under 28 U.S.C. §§ 1446(b)(3) and 1453. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999). No previous Notice of Removal has been filed or made with this Court for the relief sought in this removal notice.

## III. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT.

7. Plaintiff brings this action as a putative class action under California Code Civ. Proc. § 382. (Exh. A, Compl., ¶ 11.)[2] Removal based upon Class Action Fairness Act ("CAFA") diversity jurisdiction is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because: (i) diversity of citizenship exists between at least one putative class member and one Defendant, (ii) the aggregate number of putative class members in all proposed classes is 100 or greater; and (iii) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2) & (d)(5)(B), 1453. Although Amazon

---

[2] Amazon denies, and reserves the right to contest at the appropriate time, that this action can properly proceed as a class action. Amazon further denies Plaintiff's claims and denies that he can recover any damages.

denies Plaintiff's factual allegations and denies that Plaintiff—or the classes he purports to represent—is entitled to the relief requested, based on Plaintiff's allegations in the Complaint and prayer for relief, all requirements for jurisdiction under the CAFA have been met in this case.

  A. **Minimal Diversity of Citizenship Exists as Amazon Is Not a California Citizen.**

  8. To satisfy the CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists; that is, that one putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

  9. The Complaint alleges that "Plaintiff ARTURO ROMERO is, and at all relevant times mentioned herein [*sic*], an individual residing in the State of California." (Exh. A, Compl., ¶ 7.) The Complaint does not allege that Plaintiff is a citizen of any other state. "An individual is a citizen of the state in which he is domiciled." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). Evidence of continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC*, 652 F.3d 340, 395 (3d Cir. 2011). Therefore, Plaintiff is a citizen of California for diversity jurisdiction purposes. Moreover, Plaintiff has brought claims on behalf of putative class members at least some of whom are domiciled in California. *See* Compl., ¶ 22. Thus, Plaintiff and at least one putative class member are citizens of California for diversity jurisdiction purposes.

  10. For CAFA diversity purposes, a limited liability company is deemed to be a citizen of the state where it has its principal place of business and under whose laws it is organized. 28 U.S.C. § 1332(d)(10); *see also Ferrell v. Express Check Advance of Georgia*, 591 F.3d 698, 704

(4th Cir. 2010) (holding that a limited liability company qualifies as an "unincorporated association" under Section 1332(d)(10) for purposes of CAFA removal); *Marroquin v. Wells Fargo, LLC*, 2011 WL 476540, *2 (S.D. Cal. Feb 3, 2011) (same).  Amazon.com Services, LLC is organized under the laws of Delaware, and has its corporate headquarters and principal place of business in Seattle, Washington.  Amazon.com Sales, Inc. is the only member of Amazon.com Services LLC.  Amazon.com Sales, Inc. is a Delaware corporation with its corporate headquarters and principal place of business in Washington.

11. Amazon Logistics, Inc., the corporation that entered into a delivery services contract with Greenwich Logistics, is a citizen of Washington and Delaware for the purposes of diversity jurisdiction.  Under 28 U.S.C. § 1332, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . [I]n practice it should normally be the place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings . . . ." *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93, 130 S.Ct. 1181, 1192 (2010).  Amazon Logistics, Inc. is incorporated under the laws of Delaware and has its headquarters and principal place of business in Seattle, Washington.

12. Amazon's corporate decisions generally are made in Seattle, Washington, including its operation, executive, administrative, and policymaking decisions.  The majority of Amazon's executive officers principally conduct their business from headquarters in Washington.  Thus, at all times relevant hereto, Amazon's citizenship, whether Amazon.com Services, LLC or Amazon Logistics, Inc., has been Delaware and Washington, and not California.

13. Therefore, based on the Complaint, at least one member of the putative class is a citizen of a state different than one Defendant.  As a result, diversity jurisdiction exists under the CAFA.  28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 40002463.7

5

DEFENDANT AMAZON'S NOTICE OF REMOVAL [28 U.S.C. §§ 1332, 1441, 1446, 1453]

member of a class of plaintiffs is a citizen of a State different from any Defendant").

B. **The Putative Class Has More than 100 Members.**

14. Based on Plaintiff's definitions, the putative classes and subclasses contain more than 100 members. Based on the available data, Amazon is informed and believes that Greenwich Logistics employed more than 500 individuals who delivered products to Amazon customers in California during the period between November 5, 2016 through July 31, 2020,[3] when Amazon and Greenwich Logistics terminated their contract for delivery services.

C. **The Amount in Controversy Exceeds Five Million Dollars.**

15. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). Because Plaintiff does not expressly plead a specific amount of class damages, Amazon need only show that it is more likely than not that the amount in controversy exceeds $5 million. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).

16. Amazon's burden to establish the amount in controversy is by a preponderance of the evidence. *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547 (2014); *see also Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee* for the proposition that there is no anti-removal presumption against CAFA cases). A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554. "If a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5 million,' the court should err in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. REP. 109-14, at 42 (2005) (citation omitted).

17. "[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages." *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, *2 (C.D.

---

[3] Between approximately November 2019 and July 2020 alone, Greenwich Logistics employed more than 500 drivers.

Cal. April 28, 2015) (citation omitted); *see also LaCross v. Knight Transportation Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy."). The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what a defendant will actually owe. *LaCross*, 775 F.3d at 1202 (citation omitted) (explaining that courts are directed "to first look to the complaint in determining the amount in controversy").

18. Under *Dart Cherokee*, a removing defendant is not required to submit evidence in support of its removal allegations. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 963 (9th Cir. 2020) ("a removing defendant's notice of removal **need not contain evidentiary submissions** but only plausible allegations of jurisdictional elements.") (internal quotations omitted) (emphasis added). However, as detailed below, Amazon has both plausibly alleged and shown that the amount in controversy exceeds $5 million and that the Court has jurisdiction pursuant to CAFA. As discussed below, when the claims of the putative class members in the present case are aggregated, their claims put into controversy over $5 million in potential damages. *See* 28 U.S.C. § 1332(d)(2).

19. Although Amazon denies Plaintiff's factual allegations and denies that he or the putative classes and subclasses he seeks to represent are entitled to the relief for which he has prayed, Plaintiff's allegations and prayer for relief have "more likely than not" put into controversy an amount that exceeds the $5 million threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).[4]

---

[4] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint. Amazon's references to specific damage amounts and citation to comparable cases are provided solely for establishing that the amount placed in controversy by Plaintiff's allegations is more likely than not in excess of the jurisdictional minimum. Amazon maintains that each of Plaintiff's claims is without merit and that Amazon is not liable to Plaintiff or any putative class member. Amazon expressly denies that Plaintiff or any putative class member is entitled to recover any of the penalties sought in the Complaint. In addition, Amazon denies that liability or damages can be established on a class-wide basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff

20. As explained above, Plaintiff seeks to represent a putative class of more than 500 members. Amazon has reviewed certain data concerning the putative class and subclasses of Greenwich Logistics employees that Plaintiff seeks to represent. Based on the allegations in the Complaint, and examining only part of the time period put at issue by Plaintiff's complaint, Plaintiff has put more than $5 million in controversy as set forth below; and CAFA removal is appropriate.

### 1. Plaintiff's First and Second Causes of Action For Failure to Provide Meal and Rest Periods Put at Least $963,728 in Controversy.

21. Plaintiff seeks to represent a "Meal Period Sub-Class" of all "persons employed by Defendants, collectively or separately, and/or any staffing agencies and/or any other third parties in hourly or nonexempt positions in California four years prior to the filing of this action and ending on the date that final judgment is entered in this action . . . who worked in a shift in excess of five hours during the Relevant Time Period." (Exh. A, Compl. ¶ 22.) Plaintiff also seeks to represent a "Rest Period Sub-Class," which includes nonexempt employees "who worked a shift of at least three and one-half (3.5) hours during" the same time period. (*Id.*) Regarding these sub-classes, Plaintiff alleges that "at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of *not providing*" putative sub-class members meal or rest periods or paying premium wages for missed such periods. (Exh. A, Compl. ¶¶ 47–49 and 62–63 (emphasis added).) The Complaint expressly alleges that "Plaintiff and the putative class members were *not provided* with meal periods of at least thirty (30) minutes for each five (5) hour work period", and "were *not provided* with rest periods of at least ten (10) minutes for each four (4) hour work period, or major fraction thereof…" (*Id.* ¶¶ 32, 33.) (emphasis added). Further, Plaintiff alleges that " what meal periods were taken by putative class members were consistently interrupted by work. Plaintiff and putative class members were instructed to 'multitask' and were required to clock out for lunch and keep working while they ate." (*Id.* ¶ 32.) Similarly, Plaintiff alleges that Defendants required "putative class members to continue working

---

will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Amazon's] liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 40002463.7

8

DEFENDANT AMAZON'S NOTICE OF
REMOVAL [28 U.S.C. §§ 1332, 1441, 1446, 1453]

through their rest breaks due to the excessive workload" and were "often given work-related tasks to complete during their rest periods and were never provided the opportunity to take uninterrupted rest breaks to which they were entitled." (*Id.* ¶ 33.) Plaintiff also alleges that "Plaintiff and putative class members' meal periods were consistently taken after the completion of their fifth hour of work," and they "were never afforded to take second meal periods when they worked in excess of ten (10) hours a day." (*Id.* ¶ 32.)

22. Labor Code § 512(a) states that non-exempt employees must be provided an uninterrupted meal period of not less than 30 minutes for a work period of more than five hours. Labor Code § 226.7(b) states that if an employer fails to provide an employee a meal or rest period in accordance with state law, the employer shall pay the employee one additional hour of pay for each workday that the meal or rest period is not provided. The Complaint alleges that Defendants failed to pay Plaintiff and Class Members this additional hour of pay when required meal and rest periods were not provided. (Exh. A, Compl., ¶¶ 53, 63.)

23. Based on Plaintiff's class definition, the amount in controversy exceeds the CAFA threshold. While the relevant time period for this action is November 5, 2016 through the present, in just the eighteen months preceding this action the number of employees and shifts worked causes the amount in controversy to exceed the minimum amount in controversy. Specifically, for the period between approximately March 10, 2019 and July 31, 2020[5], Greenwich Logistics personnel worked at least 62,177 shifts making deliveries to Amazon customers that Amazon is informed and believes involved work periods of more than five hours. Amazon is informed and believes that Plaintiff's average hourly rate was $15.50, and that this rate is less than the average hourly rate of Greenwich Logistics drivers in California during the relevant time period, November 5, 2016 to July 31, 2020. Because the Complaint alleges that Defendants did not provide legally required meal or rest periods and *required* Greenwich Logistics delivery drivers to work through their meal and rest periods on a daily basis, this places an amount in controversy as to meal and rest period premium pay based on a conservatively

---

[5] July 31, 2020 is the last date that Greenwich made deliveries under its delivery contract with Amazon Logistics, Inc.

assumed 50 percent violation rate.  Under Plaintiff's theories, Amazon (and Greenwich Logistics) would be liable for two hours of pay for half of the shifts worked by a delivery driver class member in excess of five hours—one for the alleged meal period violation and one for the alleged rest period violation.  Therefore, assuming an hourly rate of $15.50, the first and second causes of action place at least **$963,728** in controversy: ($15.50 per hour x 31,088 shifts) + ($15.50 per hour x 31,088 shifts) = $963,728.

## 2. Plaintiff's Third Cause of Action For Failure to Pay Hourly and Overtime Wages Places $722,807.62 in Controversy.

24. The Complaint alleges that Defendants "had a *policy of automatically deducting thirty minutes, and up to an hour, from Plaintiff's and class members' paychecks for unpaid meal periods, regardless of whether they took a meal period or not.*"  (Exh. A, Compl., ¶¶ 31–32, 50, 81–82 (emphasis added).)  The Complaint alleges that Plaintiff and putative class members were not paid for these hours due to the automatic deduction policy and that these "uncompensated hours were worked in excess of eight (8) hours a day and/or forty (40) hours a week entitled Plaintiff and Class Members to overtime wages which they were systemically denied."  (*See id.*, ¶ 31.)  The Complaint also alleges that Defendants "failed to pay Plaintiff and **Hourly Employee Class** members all earned wages every pay period at the correct rates, including overtime rates, because Defendants directed, permitted or otherwise encouraged Plaintiff and **Hourly Employee Class** members to perform off-the-clock work."  (*Id.* ¶ 84.)  Amazon is informed and believes that the typical shift length for a Greenwich Logistics driver exceeded 8 hours.

25. Labor Code section 510 requires that any work "in excess of eight hours in one workday" must be compensated "at the rate of no less than one and one-half times the regular rate of pay for an employee."  Cal. Lab. Code § 510(a).

26. In this claim, Plaintiff is alleging that Defendants unlawfully auto-deducted 30-minute or one-hour meal periods from his and class members' time every day, even though they were required to work through their meal periods each day.  He further alleges that the half hour that Defendants allegedly illegally deducted from each shift resulted in Plaintiff and class

members working unpaid overtime, such that the unlawfully deducted half hour of time must be compensated at the employees' overtime rate of pay.  Assuming a minimum $15.50 hourly rate for the class and looking only at the limited time period identified above, Plaintiff's third cause of action thus places at least **$722,807.62** in controversy: $15.50 x 1.5 x 0.5 hours x 62,177 shifts = $722,807.62.

### 3.  Plaintiff's Fourth Cause of Action For Failure to Provide Accurate Written Wage Statements Places $424,750 in Controversy.

27. Plaintiff seeks to represent a "Wage Statement Penalties Sub-Class" of all nonexempt employees employed by Defendants in California "during the period beginning one year before the filing of this action." (Exh. A, Compl. ¶ 12.)  Plaintiff alleges that Defendants intentionally failed to provide Plaintiff and the putative members of this sub-class with written accurate itemized wage statements.  (*Id.* ¶¶ 91–93.)  For this cause of action, the Complaint seeks "$50.00 for the initial pay period in which a violation of Labor Code section 226(a) occurred, and $100.00 for each subsequent pay period in which a violation of Labor Code section 226(a) occurred." (Exh. A, Compl. ¶ 94.)

28. Here, during the relevant one-year statute of limitations period, Amazon is informed and believes that Greenwich Logistics provided wage statements to putative class members on a semi-monthly basis.  During the period of November 5, 2019 to July 31, 2020 (shortly before Greenwich Logistics and Amazon ended their business relationship), Amazon is informed and believes that at least 505 Greenwich Logistics employees made deliveries.  Amazon is further informed and believes that Greenwich Logistics issued approximately 4,500 wage statements during this period to these employees.  Thus, Plaintiff's fifth cause of action for failure to provide accurate wage statements puts **$424,750** in controversy: 505 employees during the applicable limitations period x $50 penalty for initial pay period = $25,250 + (3,995 subsequent pay periods x $100 penalty = $399,500), equaling total claimed penalties of $424,750.[6]

---

[6] The maximum penalties available under Labor Code section 226(a) are $4,000 per employee. Although Amazon satisfies the amount in controversy without assuming the maximum penalties, if Amazon were to assume the maximum penalties, Plaintiff's fifth cause of action for failure to provide accurate wage statements alone would put $2,020,000 in controversy.

### 4. Plaintiff's Sixth Cause of Action For Failure to Pay All Final Wages Places at Least $2,964,840 in Controversy.

29. Plaintiff seeks to represent a "Waiting Time Penalties Sub-Class" of all persons employed by Defendants "who separated from their employment with Defendants during the period beginning three years before the filing of this action and ending when final judgment is entered." (Exh. A, Compl. ¶ 22.) Plaintiff alleges that Defendant willfully failed to timely pay final wages to him and putative members of this sub-class. (*Id.* ¶¶ 107–108.) Specifically, Plaintiff alleges, "During the applicable limitations period, Defendants failed to pay Plaintiff all final wages in accordance with the Labor Code by failing to timely pay those final wages," (Compl., ¶ 107), and "at all relevant time during the applicable limitations period, Defendants have failed to timely pay **Waiting Time Penalties Sub-Class** members all of their final wages in accordance with the Labor Code." (*Id.*, ¶ 107) (bolding in original).

30. While a section 203 claim is subject to a three-year statute of limitations, Amazon is informed and believes that between approximately March 2019 and July 2020 there were at least 797 employees of Greenwich Logistics who performed deliveries to Amazon customers that separated their employment. Amazon is informed and believes that all such employees ended their employment with Greenwich Logistics more than 30 days before the Complaint was filed. Plaintiff alleges that these former employees are still owed unpaid final wages, the Complaint seeks a full 30 days of waiting time penalties for each employee who was terminated or resigned during the applicable limitations period. (*Id.* ¶¶ 107–108.) The Complaint does not allege that all overtime and minimum wages owed have been paid to these employees, and indeed seeks those wages as damages. *See Ford v. CEC Entm't, Inc.*, 2014 WL 3377990 (N.D. Cal. 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an inference that these sums were ever paid."). Assuming that these employees' final rate of pay was a minimum of $15.50 per hour, and that they worked at least eight hour shifts on average, the Complaint puts in controversy Labor Code Section 203 waiting time penalties of $3,720 per terminated employee ($15.50 x 8 x 30)[7], or at least

---

[7] As noted, infra, Plaintiff's hourly rate was $15.50. Based on available data, some putative class members earned more than this rate, placing additional sums purportedly in controversy.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 40002463.7

12

DEFENDANT AMAZON'S NOTICE OF REMOVAL [28 U.S.C. §§ 1332, 1441, 1446, 1453]

**$2,964,840** in the aggregate ($3,720 x 797).

31. The total amount in controversy for these four causes of action alone is therefore at least **$5,076,125.62** ($963,728+ $722,807.62 + $424,750 + $2,964,840), based on the allegations in the claims discussed above. Thus, the CAFA $5 million requirement is satisfied based on these claims alone. However, Plaintiff's other claims place additional amounts in controversy.

### 5. Plaintiff's Fifth Cause of Action For Failure to Reimburse Business Expenses Places Additional Amounts in Controversy.

32. Plaintiff seeks to represent a "Reimbursement Class" of all "persons employed by Defendants as delivery drivers in California who incurred business expenses during the Relevant Time Period." (Exh. A, Compl. ¶ 22.) Plaintiff alleges that he and the putative class members "were required to use their own personal cell phones in the course of their duties, including, but not limited to, clocking their hours worked and meal periods remotely with the web-based application on their phones," that they were "required to launder and maintain their uniforms, and that they "were required to purchase no-slip shoes and black slacks in order to execute his [*sic*] duties under Defendants' employ," but that these expenses were never reimbursed. (*Id.* ¶¶ 34, 39.) The Complaint does not allege the amounts sought for these expenses, but Plaintiff's fifth cause of action for failure to indemnify places some additional amount in controversy, causing the amount in controversy to further exceed $5 million.

### 6. Plaintiff's Request for Attorneys' Fees Places Additional Amounts in Controversy, Further Exceeding the CAFA Threshold.

33. Plaintiff seeks to recover attorneys' fees under various provisions of the Labor Code, including section 226. (Exh. A, Compl. ¶¶ 55, 65, 87, 94, 102, 111, 129, 131, and Prayer for Relief ¶ 14.) Future attorneys' fees are properly included in determining the amount in controversy, including for class actions seeking fees under Labor Code Section 226. *See Fritsch v. Swift Transportation Co. of Arizona, LLC,* 899 F.3d 785, 793–94 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."). The Ninth Circuit held that future fee estimates can be based on "customary rates and proper fees," and that "a percentage-based method," such as 25% of the amount in controversy, may also be

relevant when estimating the amount of fees included in the amount in controversy. *Id.* at 795 and 796, fn. 6.

34. While the CAFA minimum amount in controversy of $5 million is met without even considering attorneys' fees, using 25% of the amount in controversy in this case, as detailed above, the inclusion of attorneys' fees would add at least another $1,269,031.40 in controversy (25% of $5,076,125.62).

### D. CAFA's Exceptions to Removal Do Not Apply.

35. CAFA's "home-state" and "local controversy" exceptions do not apply to this removal. The "home state" exception prevents CAFA removal only when all "primary defendants" are citizens of the state in which the action was filed. 28 U.S.C. § 1332(d)(4)(B); *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1086 (N.D. Cal. 2011) ("[Home state] test requires that all 'primary defendants' be residents of the same state in which the action is filed."). Here, Plaintiff brought all claims in the Complaint against Amazon and several others, seeking damages against all without distinction. (Exh. A, Compl. ¶¶ 40–131, Prayer for Relief, ¶¶ 4–14) (alleging violations against all Defendants equally).) Because Plaintiff seeks to recover amounts equally against the Defendants, Amazon is a "real target" of the lawsuit and is a primary defendant in this case. *See Vodenichar v. Halcon Energy Properties, Inc.*, 733 F.3d 497, 506 (3d Cir. 2013) (finding that all defendants were "primary defendants" when the plaintiff appeared to apportion liability equally among them); *Harrington v. Mattel, Inc.*, No. C07-05110 MJJ, 2007 WL 4556920, at *5 (N.D. Cal. Dec. 20, 2007) (holding that Mattel, Inc. and its wholly owned subsidiary, Fisher-Price, Inc., were both "primary defendants"). Amazon is not a citizen of California, the state where this action was originally filed, and so the home state exception to CAFA removal does not apply.

36. The "local controversy" exception to CAFA jurisdiction also does not apply because during the three-year period prior to the filing of this action, more than one "class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons . . . ." *See* 28 U.S.C. § 1332(d)(4)(A); *see also Chalian v. CVS Pharmacy, Inc.*, No. CV1608979ABAGRX, 2017 WL 1377589, at *3 (C.D. Cal. Apr. 11,

2017) (holding that the local controversy exception did not apply where similar class action lawsuits had been filed against defendants in the past three years).

37. On May 26, 2020, Plaintiff Francisco Zuleta filed a class action complaint in the Superior Court of California, County of Los Angeles, which asserted similar Labor Code violations against Amazon on behalf of a class of other delivery drivers who worked for a different delivery service provider and were alleged to also be employed by Amazon. Attached hereto as **Exhibit B** is a true and correct copy of this class action complaint, which was filed in *Francisco Zuleta on behalf of himself and others similarly situated v. Rapid Pasadena Services, LLC, a limited liability company; Amazon.com LLC, a limited liability company; Amazon.com Services LLC, a limited liability company; Amazon Logistics, Inc., a corporation; Amazon Fulfillment Services, Inc., a corporation; and Does 1 to 100, Inclusive*, Los Angeles Superior Court, Case No. 20STCV20163. In addition, on August 24, 2018, Yolanda Champion filed a putative class action complaint in the Northern District of California, which asserted similar Labor Code violations against Amazon on behalf of a class of other delivery drivers who worked for a different delivery service provider and were alleged to also be employed by Amazon. Attached hereto as **Exhibit C** is a true and correct copy of this class action complaint, which was filed in *Yolanda Champion, on behalf of herself, all others similarly situated v. Amazon.com, LLC, a Delaware limited liability company[8]; NEA Delivery, LLC, dba Fast Delivery Services, a California limited liability company, and Does 1 through 50, inclusive*, Northern District of California Case No. 3:18-cv-05222. *See* 28 U.S.C. § 1332(d)(4)(A).[9]

---

[8] Effective January 1, 2018, Amazon.com LLC merged with Amazon Fulfillment Services, Inc. and changed its name to Amazon.com Services, Inc. on that same date. Effective December 30, 2019, Amazon.com Services, Inc. converted to Amazon.com Services LLC, the named defendant in this action.

[9] The "local controversy" exception also does not apply if Amazon Logistics, Inc. is viewed as the proper defendant. For example, on March 8, 2019, Plaintiffs Shaun Baskerville, Jonathan Davis, and Caesar Juarez filed a first amended consolidated class action complaint in the Superior Court of California for the County of Los Angeles, which asserted class action claims based on the same or similar Labor Code sections against Amazon Logistics, Inc. on behalf of delivery drivers who worked for another service provider. Attached hereto as **Exhibit D** is a true and correct copy of this class action complaint, which was filed in *Shaun Baskerville; Jonathan Davis; Caesar Juarez on behalf of themselves, all others similarly situated, and the general public v. Prompt Delivery, Inc., DBA Southern California Messengers; Amazon Logistics, Inc. and DOES 1 through 20, inclusive*, Los Angeles Superior Court, Case No. BC634669. (*See* Exh. C ¶¶ 50, 60–147.)

### IV. VENUE

38. This action was originally filed in the California Superior Court for the County of Alameda. Initial venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action has been pending.

### V. NOTICE

39. Amazon will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

### VI. CONCLUSION

Based on the foregoing, Amazon requests that this action be removed to this Court. If any question arises as to the propriety of the removal of this action, Amazon respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

Dated: December 16, 2020                MORGAN, LEWIS & BOCKIUS LLP

By   */s/ Max C. Fischer*
Max Fischer
Aimee Mackay
Sonia Vucetic
Taylor D. Horn
Attorneys for Defendants
AMAZON LOGISTICS, INC.
(erroneously sued as AMAZON.COM SERVICES, LLC)